United States v. Sabatino. Mr. Encinosa. Good morning. My name is Israel Encinosa, and I was court appointed to represent Mr. Sabatino on appeal and also before the district court. And I've been representing him since I believe 2019. Mr. Sabatino is serving his 20-year sentence in isolation at the Supermax at ADX Florence. Right, and he wants the return of these two hard drives that the officials seized in Colorado, right? That's correct, Your Honor, and that's what we're here for. Yeah, but the rule pretty clearly says that he needed to file that where he's incarcerated, right? Well, not really, Judge, because ... That's where the property was seized, right? Not, we disagree with that, Judge. Okay. Okay, and the reason ... Where is that property? The property is here in Florida, in the U.S. Attorney's Office or the FBI headquarters here in South Florida, and it was seized at the direction of the prosecutor. It was not seized because of any violations by Mr. Sabatino. There's allegations that ... Your Honor, can you clarify that? I understood that he was viewing something while in Colorado, and it was those depictions on the hard drives that were taken, which is why the question of whether or not the proper venue is in Colorado seems appropriate. So why is that not a correct ... It's not appropriate for this reason. Well, no, first, factually, is that correct what I just described? Because you just told me the property was here. It was seized at the request and at the behest of the prosecutor. That's a different question. Okay. That's for the district court if we ever get to an evidential hearing, which that's what we're here for. We want to remand. Yeah, so you filed a motion in this case. Yes. And the motion said it was pursuant ... No, I just want to make sure this is right. It said it was pursuant to Rule 41G. Yes. And then it said ... I mean, I read the motion. It laid out this about how he was viewing this evidence in Colorado, and it was taken at the Supermax facility, right? Your Honor, he has two hard drives and some CDs. They're old. He purchased them. They're his in 2014 when he was here in Miami-Dade County. They were being stored, though, in a discovery room in prison in Colorado, right? They were being stored in the discovery room in Colorado. And if all that's on the motion, I guess the question about the evidential hearing, so Rule 41G, which you invoked in your motion, says that a Rule 41G motion, quote, must be filed in the district where the property was seized. So isn't the question for us just to look at what you say in your motion and determine based on your motion where this property was seized? Your Honor, if you look at the emails between myself and the officials in Colorado, there's one in particular from the warden of the ADX that advised me that the seizure wasn't done by ADX. The seizure was done as follows. We obey consulting with the United States Attorney's Office for the Southern District of Florida. What type of material was authorized to be in the discovery material? Staff advised you, Sabatino, were not authorized to have possession of these hard drives pursuant to an agreement. There's no agreement. Well, I guess I understand that. I guess my question is just, you're saying, I just want to make sure we're on the same page as what the question is we're answering. The question that we're supposed to answer is where the property was seized, right? What district was the property seized in? Because that's what the rule says, right? Mr. Sabatino, I just want to make sure that's the question we're answering. The ADX Florence is in the District of Colorado. If the BOP and ADX would have seized the hard drives, they have a duty under the Supreme Court case of Wolf to give them a copy of a citation.  Antonino. Yes, Antonino. Antonino, I'm sorry. Close enough. Let's get back to Judge Brasher's question. Yes. The question we have to answer, right, is where the property was seized because that then determines where the motion was filed, has to be filed, right? Simple yes or no. Yes. Okay. And the case law. That's the question. We understand you've got an argument that the property was seized somewhere other than Colorado. Right. That's a different point. The question is, where was the property seized? The property was actually in Colorado at the ADX Supermax in the evidence. Right. So what is your argument that even though the evidence was in Colorado, that it was actually seized here in Florida? Because the prosecutor first said that Colorado seized it because he was viewing pornography. That's incorrect. He was never cited by the BOP. He was never cited by ADX. There's no citation whatsoever. And the emails that I... What does that have to do? I mean, what does that have to do about the location? So I understand you're saying... The BOP didn't seize it. Okay. What's your best case? Because as I understand your argument is you're saying that the location of the seizure is where the decision to seize was made. What is your best case for that proposition? There are several cases. There's the case of Richie B. Smith, which is a Fifth Circuit, but before it was in 1975. It talks about equity, equitable jurisdiction. And then it even cites, I believe, a case called, and I hope I don't mispronounce it, Hunsucker. And that case talks about... The rule has been amended. It doesn't read the same way as it did when the Richie case was decided. Isn't that right? It was modified. I'm not quite sure. I didn't look it into a judge, but you might be right on that. Let me ask you a question that's... So one of the things you complained about in your brief is that there was no transfer. So that the district court... The district court's order here was a little cursory. The district court said, look, this should have been filed in Colorado. Therefore, I dismiss, for lack of jurisdiction, which doesn't make a lot of sense. You say, look, it should have been transferred to Colorado if it should have been filed there. Did you ever ask for it to be transferred to Colorado in the district court? No, because my appointment doesn't go to the district court of Colorado. Mr. Sabatino is not allowed to communicate with anyone. Only two persons, his mom, with supervision by the FBI, and with me. And I'm not an attorney in Colorado. I perhaps can ask to be admitted pro-Hagbichi, but I don't even know if my appointment in the Southern District of Florida will cover that. I think the proper way that it should have been done, the judge was aware of the restrictions. She imposed the restrictions on Mr. Sabatino. I think she should have transferred the case, if she strongly believed in that, to the Southern District of Colorado. Well, but I don't understand. So you just said, I just asked you if you ever asked the district court to transfer it to Colorado, and you said that... I have not. Okay. So she was supposed to do that sua sponte, and just make that up? There's some cases that the court has done it on their own, and especially under the due process clause, since Mr. Sabatino is not able to communicate with anyone. He's even a restrictive filer. If you look at his docket sheet, he cannot even file papers in any court. I remember, were you involved in the last appeal in this case? There has been several appeals. I mean, I was involved in that one, and I recall very, very clearly about his restrictions being very severe. Yes, very severe. Perhaps illegal under the statute, but... Yes, yes. And that's what I was trying to talk to the prosecutor about lately, but he doesn't seem to understand that. Well, here's the thing. So your lack of an appointment in Colorado, I guess I'm trying to figure out... It seems like if you want to file this, and we decide that the venue would be appropriate in Colorado, as opposed to the Southern District of Florida, then maybe the right thing for you to do would be to just ask somebody to let you do that, right? So like, you could ask the district court here to transfer it there. You could go to Colorado and ask them to allow you to be pro hogdiche. It just seems like this doesn't really answer the question about whether the property was seized here in Florida or seized in Colorado. I could do that, Your Honor, but then what am I going to do? Am I going to be appointed in Colorado? I don't know. Am I going to be... Is my appointment here going to be extended? I don't know. I guess my point is these problems that you have, like practically in representing him in Colorado, don't really seem to be relevant to the rule that says that this motion has to be filed in the district where the property was seized. It seems like we can't really solve that problem here. Like, it seems like asking the district court to help you solve that problem is a place where you could potentially solve that problem. I understand what the court is saying. I just want to point to the fact that different districts have come to different conclusions. Okay. I'm not aware, but I understand your position. Mr. Encinosa. Yes. Let's hear from Ms. Cohen. Thank you. May it please the court. Alex Cohen for the United States. This court should affirm the district court's ruling because the motion was filed in the wrong venue. The text of Rule 41G plainly states that the motion must be filed in the district where the property was seized. Here, based on the pleadings and their attachments, the property was seized in Colorado. The motion alleges at paragraph 20 that Sabatino was deprived of the hard drives as of January 17th, 2025. As reflected in the attachment to the government's response, which is DE 710-1, that is the date that the correctional officers observed him looking at what they thought was pornography and decided to seize the hard drives. It doesn't change the question of where the property was seized that several weeks later, the hard drives were then sent to the Southern District of Florida. It's clear from attachment AA to the motion that the hard drives were not sent to South Florida until weeks later. That email is dated March 4th. And that's an email where the AUSA lets VOP know that they can send the hard drives down to South Florida as originally proposed. But that doesn't change the question of where the initial seizure occurred, which is what venue turns on under this rule. Tell me, this is a, we've said that in this post-conviction context that this is a civil proceeding in equity. You're familiar with that?  So can the venue requirement from a criminal rule of civil procedure govern that kind of civil proceeding? Yes, Your Honor. I think the venue provision can govern even though this is a civil equitable proceeding for several reasons. First, as the Fourth Circuit explained in Garcia, Rule 41 falls under a section of the criminal rules, Title 8, which is for special and supplementary proceedings. And we think this qualifies as a special or supplementary proceeding under the rule. Also, in this case, this court's other post-conviction Rule 41G cases, for example, Potez-Ramirez or Howell, those are cases where this court said they were civil suits in equity. And while they don't deal with venue, the court still looks to the text of Rule 41G to determine whether relief should be granted. So we think if he's allowed to avail himself of Rule 41G in obtaining relief, he should have to follow the venue provision under the rule. Yeah, we've said at least in one case that Rule 41 applies only to criminal proceedings, but it was dicta. Would you say that was loose language? If Your Honor is referring to the language in Ritchie? Yeah, well, actually, Finn versus Cobb County Board of Elections said that. I don't recall that particular case. There's similar language in Ritchie from the former Fifth Circuit that is dicta because the holding of the case turned on jurisdiction and not on the venue issue. So yes, I don't think that language is necessarily controlling it. As Your Honor pointed out during the other side's argument, the rule has been amended, at least since Ritchie. In 2002, the permissive language on venue in the rule was amended to mandatory language. Actually, it was $7,470. $67,470, some kind of forfeiture, actually. That's what it was. So usually these cases, when we have to address issues, it's because someone has filed just like a complaint that they haven't identified a specific rule that they're proceeding under, and then we have to decide how to treat that. But here, he specifically said he was proceeding under Rule 41G. Does the fact that he specifically cited that rule make a difference in how we have to view this? Yes, absolutely, Your Honor. I think because he chose to use Rule 41G as the mechanism through which he was seeking relief, he should have to follow the venue provision under that. It is, even though it's 41G, it's a civil proceeding in equity. Yes, Your Honor. Well, what if it was incorrect for Mr. Sabatino to proceed under Rule 41G? Should we, I mean, and also the court's order was a little confusing. We're here on venue, but I believe the order spoke to jurisdiction. So two questions. One, should we address jurisdiction or should we just exercise equitable jurisdiction to get to venue procedurally? What is the best way to resolve this matter, assuming that regardless, he has no case in this district? I think the simplest way to resolve it is based on venue. I understand the district court did use the word jurisdiction, but I think it's clear from the court's reasoning that it was a venue ruling. I think that's the simplest resolution. And the court can rule on venue without reaching jurisdiction because while the Supreme Court has required the court to address its own jurisdiction before reaching the merits of an issue, it doesn't necessarily have to before reaching another threshold question like venue. So I think this court can just rule on venue grounds. With that said, should the court have questions, I'm happy to address equitable jurisdiction as an alternative argument for affirmance. Let me just follow up on the sort of second part of Judge Abudu's question. Is this, I mean, this isn't a real 41G motion in the sense like he should be suing the prison, right, for taking his stuff. Like this should be some kind of lawsuit that he brings against like an officer or something, right? That's what he should have done. I do agree with that. I think that really what he should have done is exhaust his administrative remedies if he thought that the proper procedure for seizing contraband wasn't followed and then ultimately bring a 1983 or Bivens because this is federal action to challenge that. And really, I think most Rule 41G cases involve the seizures of property in the course of a criminal investigation as the court is aware. So we don't think this is necessarily actually proper as a Rule 41G, but given that he chose to avail himself of that rule, as mentioned earlier, we do think he should have to follow the venue provision in the rule. And another reason like, I mean, we just sort of have to address this venue issue because it's sort of the problem here is at the front end where he's chosen this rule, but yet he's not following the rule that he's chosen. It may be that at the end of the day, he's chosen the wrong rule, but at the very least, he has to follow the rule that he chose, right? I agree, Your Honor. I do want to respond to one of Judge Brasher's questions to the other side about whether this should have been transferred as opposed to dismissed. In 28 U.S.C. 1406, it says, if a case is filed in the wrong venue, a district court shall dismiss or if it be in the interest of justice transfer. So we don't think there was any error in the court choosing to dismiss as opposed to transfer. Was there any effort? I couldn't find anything in the record, but like, did he ever say, please transfer instead of dismiss or anything like that? I don't recall anything to that effect. And I also wanted to know, and I just have one button on that too. I looked, I mean, we haven't said like a district court is under an obligation to raise transfer sui sponte or something. So we would say that they, the district court should have transferred this. We'd have to say like, the district court is under some obligation to sui sponte raise the option to transfer. That's correct. I think the court has discretion to transfer, but it certainly doesn't have to. And under the statute, it's well within the court's right to dismiss. I also want to note in response to Sabatino's argument that he simply cannot file in Colorado as a result of the communications restrictions. There is a 2021 case, which was after the communications restrictions went into effect. He filed a pro se 1983 lawsuit in Colorado. The case number for that is 21CV01047. So he can file in Colorado. He can also move to modify his communications restrictions as he has successfully done several times in the past. In addition to Mr. Encinoza potentially appearing per hoc vice. Well, correct me if I'm wrong about this. So he would have the same problem with this whole, like filing something in Colorado, like the transfer to Colorado versus filing something originally in Colorado. Like those are the same thing as far as the communication restrictions and the counsel. Like there's no difference, right? I think that that's right. If the court were to transfer, he still would have to either pro se or through counsel would have to appear in Colorado. I will say it does not appear that the communications restrictions really bar him from pro se filings. This started as a pro se filing, right? Or did it? Did it start with Mr. Encinoza filing the motion or did? So the operative motion, Mr. Encinoza filed, but I can't recall if there was an earlier version that was filed pro se. He does frequently file pro se. He's a very frequent. Mr. Court strikes those. I mean, that's correct. They're just constant striking a pro se filing. Correct. So because there are so many pro se filings, I don't know. I'm sorry, I'm sorry. He's represented here. Yes, exactly. So this is sort of an unfair question, but we've got some time. So I was here like two years ago for one of his appeals and it seemed like his restrictions are illegal because the statute says that if you're going to restrict someone's communication, you're supposed to identify the person they restricted from communicating with. And his restriction says he's not allowed to communicate with anybody unless it's on a list allowing him to communicate. Any thoughts about that? I asked that question at the last appeal. The appeal settled. So I have not studied the statute, but I will note, you know, based on this is a very unique case because this particular offender has a long history of committing crimes in prison. First, the underlying case here, he has two RICO offenses, the 2015 and the 2017 that he committed at FDC in Miami from being incarcerated. In addition to that, I should say, during those offenses, as reflected in the factual proffer, he attempted to kill co-conspirators who testified against him from within the prison. In addition to that, if the court look at the PSI, you'll see that his three former federal cases before the underlying ones here were also all crimes committed in prison. So this is someone with an extremely lengthy history of committing crimes, like major fraud crimes worth $10 million in fraud, as well as attempting to murder people from a prison cell. So the government is particularly cautious when it comes to this defendant. I know that doesn't necessarily answer the legal question, but... I'll just say, I mean, just for the sake of communicating this to the U.S. Attorney's Office, I mean, I think this would be good if you were loose on allowing him to add people to his list of people he's allowed to talk to, given that you're probably defending something that's illegal anyway. You know, I think that's probably what happened in the last appeal is that once it came up here and we began to ask questions about his underlying sentence, that the U.S. Attorney's Office just said, you know what, we're not going to fight adding people. So for example, if there were to be like a Colorado lawyer who agreed to represent him, I would sort of just expect the U.S. Attorney's Office to like allow him to add that lawyer to his list of people he's allowed to talk to and not fight it, right? I understand your perspective, and surely we'll communicate that to our trial lawyers. Of course, once he reads a ruling if we were to affirm, he would know that he needs to file something in Colorado and being unrepresented there, there'd be nothing to prevent him from filing it pro se. That's correct, Your Honor. I will note one other comment on the communications restrictions. Should the court be curious about them, he does have to file a yearly renewal notice about whether they should be renewed each year. And he recently filed one, which is docket entry 738, which includes a statement by the defendant where he vows that he will continue to commit crimes if not for the communications restrictions. Very interesting. If the court has any further questions, I'm happy to address them. If there are none, the government will rest on its brief and ask that the court affirm. Thank you, Ms. Cohen. Mr. Encinosa. You pronounced it correctly, Your Honor. Thank you. Your Honor, over to you. You're my best. Well, there's no debate. He could proceed pro se, could see if the court would transfer, appoint him a counsel. U.S. attorneys could be a little bit more relaxed in terms of visitors. All of that is true, correct? I don't, I'm not quite sure that the case in Colorado was filed by him. I think it might be some type of class action. There's nothing to prevent him from after, if we were to affirm. Right. He would get that ruling from you, right? He will get that ruling from me. Yes. So he'll know that he has to file in Colorado. Yes. If we were to affirm. And there's nothing to prevent him from doing that pro se. I'm not sure if there is. I think he's restricted from filing in Colorado. I believe that law, there was a lawsuit filed before when he was first in prison at ADX in 2010 and he had no restrictions. He was able to do it. If there's one now, it might be part of a class action lawsuit. As far as I know, he's not able to file in any other courts. Well, what could, he has a filing restriction in Colorado? Well, under the 3582, he cannot contact anybody. And that's what the district court here ordered him to. But your point is that he's actually not allowed to even send mail to anyone except for the four people on his list, right, or five people on his list. It's mom and me. Well, there are some other counsel on there. I guess they're old counsel. I don't believe he's allowed to talk to anybody under the 3582E. That's a surprise to me. I really doubt it. Because ADX is very strict. I'm in direct contact with them. Well, with all of the restrictions, which perhaps are onerous, those facts don't impact our analysis, do they, as to whether or not venue is proper, as to whether or not the requirements of Rule 41G have been satisfied. I mean, it sounds like his challenges that he might face in Colorado are separate and apart from whether or not he's properly before us. Why is that not true? To me, he's not able to file in Colorado. That's my knowledge. I don't know otherwise. You might be, the prosecutor might be correct. I don't know. That's the first time I hear that he's filed something in 2021. What Judge Abudu is sort of asking is, the reason he can't file in Colorado is perhaps because he has unreasonable restrictions as part of his communication restriction in respect to his underlying sentence. And we can't sort of fix that through creative venue rulings. You know, we have to just apply this venue law. And then if there is some problem with his restrictions, you need to do something else about that and not ask us to allow him to file stuff in the Southern District of Florida as a way to kind of get around his restrictions. I mean, I'll do what I can from my end, but also I would request a practical solution might be to remand the case to the district court, instruct them to transfer the case to Colorado and make arrangements as to how he's going to be able to communicate. That would take care of the due process issue with regards to him not being able to access the courts. I think that might be a practical solution to this. And then you'll be able to do something in Colorado. But I still think that the court has jurisdiction over attorneys in this court that have made certain misrepresentation as to the seizure. He wasn't seized because of the pornography. He was seized at the request of the prosecutor. And I'm not talking about the prosecutor here. It says an agreement by the United States Attorney's Office and your attorney, after some deliberation, the United States Attorney's Office requested this material be returned back to the district court. I mean, I don't know how he knows what's in this hard drive unless he has superpowers, but basically this is his hard drive. He has attorney-client privilege information there. He has work product and they want to go into it. I think the court should exercise equitable jurisdiction on this. This is a very callous disregard for Mr. Sabatino's right. I mean, we do protect constitutional rights and there's no bigger constitutional rights than attorney-client privilege and attorney work product. And he has 500,000 pages from cases in New York to the cases here. To the merits of the seizure, it sounds like. I'm not sure. How does everything you just said assist us in terms of venue? Well, I think if the court would have made an equitable consideration of all the facts in this case, which it didn't, it just relied on the unattested motion by the government. I think that was wrong in many levels because there's no, I mean, he didn't even swear that that was correct, which was totally false. We welcome an opportunity to prove that those statements were false.  Mr. Encinoza. Yes. I think we understand your case. Thank you. As you mentioned earlier, you were court appointed and we appreciate you accepting the appointment. And I appreciate being here. Thank you. Thank you. We're going to move to our second case.